IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | Criminal Action No. **3:18-CR-100-L** |
| | § | |
| **DAVID MICHAEL LADD** | § | |

## MEMORANDUM OPINION AND ORDER

**I.  Introduction**

Before the court is Defendant's Motion for Leave to File Motion to Suppress (Doc. 92), filed April 23, 2021; and Defendant's Motion for Leave to File a Reply to the Government's Response to Motion for Leave to File Motion to Suppress (Doc. 95). After careful consideration of the motions, response by the Government, record and applicable law, the court **denies** Defendant's Motion for Leave to File Motion to Suppress (Doc. 92), and **denies** Defendant's Motion for Leave to File a Reply to the Government's Response to Motion for Leave to File Motion to Suppress (Doc. 95).

**II.  Motion for Leave (Doc. 92)**

Defendant David Michael Ladd ("Defendant" or "Mr. Ladd") seeks leave to file a motion to suppress the use of a pole camera that was used to monitor his movements for approximately two and one-half months. He makes the request because he contends that his counsel only recently learned on March 23, 2021, that the United States Court of Appeals for the First Circuit held an *en banc* oral argument in *United States v. Moore-Bush*, No. 19-1625, to determine whether the prolonged use of a video pole camera requires a warrant under the Fourth Amendment to the United States Constitution. The Government opposes the motion. The court, for the reasons stated by the Government and those stated herein, agrees that the motion should be denied.

**Memorandum Opinion and Order – Page 1**

### III. Discussion

Mr. Ladd cites to no federal authority that sufficiently supports and is binding on this court to justify suppression of the evidence obtained by use of a pole camera in this case. The court has reviewed the three cases cited by the Government: *United States v. Houston*, 813 F.3d 282, 287-90 (6th Cir. 2016); *United States v. Jackson*, 213 F.3d 1269, 1280-81 (10th Cir.), *vacated on other grounds*, 531 U.S. 1033 (2000); and *United States v. Vankesteren*, 553 F.3d 286, 290-91 (4th Cir. 2009). None of these cases supports Defendant's argument. *Houston* and *Jackson* both rely on preexisting Supreme Court authority (citations omitted) to hold that the use of a pole camera or other recording of a residence and its curtilage that are exposed to public view does not violate a person's reasonable expectation to privacy under the Fourth Amendment. *Vankesteren*, while having some relevance, deals more with the "open-fields doctrine." *Id*. at 289.

Mr. Ladd's reliance on *United States v. Cuevas-Sanchez*, 821 F.2d 248 (5th Cir. 1987), is misplaced. In *Cuevas-Sanchez*, the defendant had installed a "10-foot-high fence" that bordered his back yard. Federal agents, after obtaining court authorization, "installed [a] video camera atop a power pole overlooking" the fence. *Id*. at 250. This camera allowed law enforcement agents to observe criminal activity regarding drug trafficking in *Cuevas-Sanchez's* back yard. *Id*. The Fifth Circuit stated that "[t]he [G]overnment's actions … qualif[ied] as a search under the [F]ourth [A]mendment." *Id*. at 251.

*Cuevas-Sanchez* does not carry the day for Defendant. As Mr. Ladd readily acknowledges, there is no 10-foot-high fence in his case, or any fence at all. Moreover, he acknowledges that "the pole camera was set up to surveil the front of the property, and the front of the property was not protected by a fence." Def.'s Mot. to Suppress 4 n.5 (Doc. 92-2). Further, the federal agents in *Cuevas-Sanchez* had applied for court authorization to set up the video pole camera. *Cuevas-*

**Memorandum Opinion and Order – Page 2**

*Sanchez*, 821 F.2d at 249-50. That the Government sought court authorization from the district court necessarily lends sufficient support that it knew or believed that the use of video pole camera could violate the Fourth Amendment under the circumstances presented in *Cuevas-Sanchez*. The facts in *Cuevas-Sanchez* are clearly distinct from those present in Mr. Ladd's case. Additionally, it is not uncommon for residents to erect or maintain a privacy fence around their back yards, which tends to indicate that there is some reasonable expectation of privacy insofar as that portion of the property is concerned. For all of these reasons, *Cuevas-Sanchez* does not support Mr. Ladd's argument that the video pole camera as used in this case contravenes the Fourth Amendment.

Finally, Defendant makes no argument or assertion that the pole camera captured views or activities that were unavailable to members of the public had they parked in front of the property on public property or walked past the property on a public road or street. In other words, if the images captured by the camera are the same images that are plainly visible to members of the public who passed by or viewed the property in question from a public place, no Fourth Amendment violation occurred by the Government's use of the pole camera.

Mr. Ladd has set forth nothing to justify that he had a reasonable expectation of privacy in this case, and the court does not understand why he waited until now to seek leave to file a motion to suppress. Defendant relies heavily on *Carpenter v. United States*, 138 S. Ct. 2206 (2018), as it is liberally sprinkled throughout his proposed motion to suppress. *Carpenter* was decided on June 22, 2018, almost three years ago. With respect to the motion for leave and the proposed motion to suppress, all cases cited by Defendant were available and should have been known to him through the exercise of reasonable diligence well before the date his motion for leave was filed. The case of *United States v. Moore-Bush* was argued *en banc* on March 23, 2021, yet the motion was not filed until 31 days after the argument. Moreover, the First Circuit announced in December 2020

that *en banc* oral argument would take place in March 2020. Even if the court accepts Mr. Ladd's explanation, the motion does not adequately explain why it could not have been filed earlier. Regardless, any opinion issued in that case by the First Circuit is not binding on this court.

When Mr. Ladd and his counsel summarily and cavalierly dismiss the late filing date of the motion by stating that no prejudice will occur because it was filed 52 days before trial, they miss the point. First, 14 of the 52 days have now elapsed since the filing of Defendant's motion. The statement is made in such a way as if the court has little or nothing to do in those 52 days. The court does not know whether the statement was made out of arrogance or because of an innocent lack of knowledge regarding this court's busy docket.

Second, Mr. Ladd's case is not the only case in this court set for trial in June. The court has been, and is, dealing with pretrial motions and matters in the other cases set for the month of June, and all of the motions in those cases were filed before the two late motions in this case that Defendant has filed. Prior to the COVID-19 Pandemic, the court had a busy docket; the criminal docket has become even busier than it was prior to the Pandemic.

The court held a motion-to-suppress hearing yesterday in *United States of America v. Michael Tremaine Schexnayder*; and another such hearing is set in *United States of America v. Juan Carlos Sanchez-Ceja*, for May 14, 2021. The motions in both of these cases were filed before the current motions were filed by Mr. Ladd. The court has to write opinions or orders setting forth its rulings regarding each of these cases. The *Schexnayder* case is set for trial on June 1, 2021, at 9:00 a.m., and the *Sanchez-Ceja* case is set for trial on May 18, 2021. Mr. Ladd apparently believes that the court has time to set other important matters aside and entertain a legally-insufficient motion to suppress.

A district court has the inherent power and right to manage its docket, which is why it issues scheduling orders. This case was set for trial for June 14, 2021, by the court's Amended Criminal Trial Scheduling Order of October 23, 2020 (Doc. 91). When motions are filed late and good cause does not exist to grant them, scarce judicial resources are unnecessarily expended and diverted from other matters on its crowded docket.

The latest motion for leave is not the first time Defendant has requested leave to file a motion after pretrial deadlines have passed. On November 14, 2018, Mr. Ladd filed his Unopposed Motion for Leave to Dismiss the Indictment (Doc. 57), and he also filed a motion to continue the trial date on the same day (Doc. 59). The motion was based on Mr. Ladd's counsel becoming aware of *Gundy v. United States*, No. 17-6086, pending before the United States Supreme Court. Among other things, Defendant's counsel raised one of the same arguments that he raised in his current motion, namely, that he would provide ineffective assistance of counsel if he did not address the issue in *Gundy* and, therefore, should be allowed to file a motion to dismiss.[1] The court granted the leave requested on November 16, 2018 (Doc. 63), and it continued the case as requested by Mr. Ladd until after the Supreme Court issued its opinion in *Gundy*. On June 20, 2019, the Supreme Court issued its opinion in *Gundy*, 139 S. Ct. 2116 (2019), which affirmed the appellate court's decision and held that 34 U.S.C. § 20913(d), which authorizes the U.S. Attorney General to determine whether SORNA's requirements apply to offenders convicted of sex offenses before SORNA's enactment, does not violate the nondelegation doctrine. As the sole assertion in

---

[1]The argument lacks merit. As the Government correctly notes, "[C]ourts evaluate the effectiveness of counsel's performance to 'directly controlling precedent' at the time." Gov't Resp. to Def.'s Motion for Leave to File Mot. to Suppress (Doc. 94 at 2) (citing *United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009); *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

Defendant's Motion to Dismiss was no longer at issue, the court denied Defendant's Motion to Dismiss the Indictment (Doc. 74).

Had the Supreme Court ruled the way Mr. Ladd desired, such ruling certainly could have affected this case's outcome. This is so because a decision of the United States Supreme Court is binding on this court, while a decision by the First Circuit *en banc* is not binding on this court. Thus, the court sees no judicial economy or efficiency in granting a motion to allow the filing of a motion to suppress, even if the First Circuit rules in favor of the defendant in *United States v. Moore-Bush.*

The court now turns to another matter that needs to be addressed and corrected. Defendant has mischaracterized (perhaps unintentionally) the court's action regarding whether to conduct a jury or nonjury trial in this action. On November 9, 2018, the court denied Mr. Ladd's oral request for a bench trial (*See* Doc. 53). On November 14, 2018, Defendant requested a bench trial (Doc. 58) pursuant to Federal Rule of Criminal Procedure 23(a). The court had previously made it clear to the parties that it was not inclined to grant the motion for a bench or nonjury trial, but the court, nevertheless, stayed its ruling regarding Defendant's Request for Bench Trial (Doc. 63). The court had earlier informed the parties that it had to approve a nonjury trial pursuant to Federal Rule of Criminal Procedure 23(a)(3), notwithstanding any agreement by the parties.

Defendant did not want a jury trial because he "believes that he will suffer uncorrectable prejudice if he is required to have his case heard by a jury in light of the evidence he expects the [G]overnment will attempt to present to such jury." Unopposed Request for Bench Trial 1, ¶ 3 (Doc. 58). The court denied the motion without prejudice on September 20, 2019 (Doc. 78).

On June 12, 2020, the court *sua sponte* reconsidered (Doc. 79) its denial of Defendant's Unopposed Request for Bench Trial (Doc. 58). Because of the Covid-19 Pandemic and its severity,

**Memorandum Opinion and Order – Page 6**

and the need to avoid unnecessary delay and promote the administration of justice, the court reversed itself and granted the unopposed request for a bench trial (*See* Doc. 79). Four days later on June 16, 2020, Defendant filed his Jury Trial Demand (Doc. 80). Defendant chides the court for reconsidering its earlier decision because "no motion for reconsideration [was] pending." *Id*. at 1. The court does not need a pending motion to reconsider an earlier order, as it may consider any order it issued earlier, unless it no longer has jurisdiction over the case. This is so well-settled that the court will not even cite any authority for this principle of law, and no reasonable person would dispute it. The jury trial demand was filed almost nine months after the court denied the motion for a bench or nonjury jury trial, which Defendant had requested vigorously and made it unequivocally clear to the court that he did not want a jury trial.

Mr. Ladd at no time informed the court that he now desired something to which he had previously objected. To correct the revisionist history touted by Defendant, the court notes that it had earlier insisted that this action be heard by a jury. It was Mr. Ladd who did not want to exercise his constitutional right to a jury trial because he believed that some evidence would be admitted that was unduly prejudicial to him and could not be cured by a limiting instruction.

Because of Mr. Ladd's repeated requests and insistence on a nonjury trial, as well as the safety concerns posed by the COVID-19 Pandemic, the court *sua sponte* decided to grant Defendant what he had requested on several occasions. Having a nonjury trial would have greatly reduced the number of persons, especially members of the panel and those selected to serve as jurors. The implication or impression that the court was attempting to deny Mr. Ladd his constitutional right to a jury trial is false and misleading, and disrespectful to the court. Mr. Ladd should have simply stated that he wanted to exercise his right to a jury trial, which the court could not deny him, and *that would have been the end of the story*, as the court obviously would have

**Memorandum Opinion and Order – Page 7**

granted his request for a jury trial. The comments chiding and lecturing of the court as set forth in his Jury Demand (Doc. 80) were, therefore, unnecessary. Rather than having complete candor with the court, Mr. Ladd revised history and made it seem as if the court had some nefarious intent or scheme to deny him a jury trial when he only gave notice to the court that he had changed his mind four days after the court decided to grant him what he had originally requested on several occasions. *Such tactics and legal legerdemain will not be allowed at trial.* Bluntly speaking, given the history of this case, the court does believe that Mr. Ladd's decision to request a jury trial was made until after he became aware of the court's order of June 12, 2020.

**IV.     Motion for Leave to File a Reply to the Government's Response to Motion for Leave to File Motion to Suppress (Doc. 95)**

First, the motion is in direct violation of a court order. On April 26, 2021, the court issued a gavel order specifically stating, "No reply will be allowed by Defendant." Despite the unequivocal language, Defendant filed a motion for leave on May 3, 2021.

Second, and more importantly, the court issued the order disallowing a reply because it had reviewed the motion prior to the Government's response and was convinced that the earlier-filed motion for leave to file a motion to suppress should be denied. In reviewing the second motion to leave, Defendant essentially restates his prior arguments and nothing of substance was added to convince the court that any *controlling* authority indicated that a motion to suppress would be successful or even warranted. As no binding authority was provided or referenced, filing a motion to suppress did not advance or promote the interest of justice, and the court saw no utility in allowing a reply to the first motion for leave.

**V.      Conclusion**

The court has been extremely patient with Mr. Ladd regarding this action. This is an old case—one of the oldest criminal cases that the court has on its docket. In retrospect, the court

**Memorandum Opinion and Order – Page 8**

should not have granted a continuance based on *Gundy*, and this case would no longer remain before the court. Of course, hindsight is always twenty/twenty, and it teaches valuable lessons.

As previously noted, Defendant filed a motion to continue the trial date on November 14, 2018, which was less than *four weeks* before the scheduled trial date of December 10, 2018. The court granted the continuance because Defendant's motion raised some valid concerns, as the *Grundy* case was pending at the Supreme Court and its ruling could have substantially affected Mr. Ladd's case. That situation is not present here because his current motions do not raise legal issues of the magnitude of those raised in *Gundy*; however, there is one major similarity: the motions filed in 2018 and those filed recently were all filed well beyond the deadlines set by the court and before approaching trial dates. Had the continuance in November 2018 not been granted, this case would have been tried in December 2018, well ahead of the Pandemic, which has caused unprecedented delay in many criminal cases. While Defendant argues that he is not requesting a continuance of the trial, he for all purposes is doing so. Either the court would have to divert its attention from other matters set on its criminal docket during the months of May and June, *which it will not do*, or grant a continuance in this case.

No binding authority has been cited to this court that justifies the filing of a motion to suppress. This court simply cannot afford to further delay a trial based on what Defendant believes a court may do, or expend scarce judicial resources on a motion that fails to cite any authority that is binding on this court in support of his position. A court has to use its best judgment and apply the law as it exists at the time a trial takes place. "The jig is up." This case will proceed to trial as currently scheduled, unless Mr. Ladd decides to plead guilty.

Accordingly, for all of the reasons herein stated, the court **denies** Defendant's Motion for Leave to File Motion to Suppress (Doc. 92.); **denies** Defendant's Motion for Leave to File a Reply

**Memorandum Opinion and Order – Page 9**

to the Government's Response to Motion for Leave to File Motion to Suppress (Doc. 95); and **strikes** Defendant's Proposed Motion to Suppress and Defendant's proposed reply.[2]

**It is so ordered** this 7th day of May, 2021.

                    Sam A. Lindsay
                    United States District Judge

---

[2]Although both documents have been stricken, they remain part of the case for record purposes.